DECISION AND JUDGMENT ENTRY
{¶ 1} Nasrin Afjeh, pro se, appeals the decision of the Lucas County Court of Common Pleas that found the size requirement of the village of Ottawa Hill's sign ordinance to be constitutional and ordered the removal of the sign painted on her garage door. Because the village's size requirement is not unconstitutional and the ordinance was severable, we affirm.
Procedural History
 {¶ 2} On October 15, 2001, the village of Ottawa Hills ("village") filed a complaint for declaratory judgment against Nasrin Afjeh and her husband, Abdollah Afjeh, because the Afjehs had erected a sign on their garage door that exceeded the height and size limitation in village Ordinance No. 96-20. The sign read "WELCOME TO OTTAWA HELL — WE STILL GOT KAKISTOCRACRY." The village asked the Lucas County Court of Common Pleas to declare its sign ordinance constitutional, to enforce it against the Afjehs, and to issue an order directing the Afjehs to remove the sign. After the Afjehs filed their answer and counterclaim,[1] the village filed a motion asking for a preliminary and/or permanent injunction directing the Afjehs to comply with Ordinance No. 96-20. The trial court held hearings on March 15, March 22, May 10, and June 26, 2002 on the village's motion for preliminary/permanent injunction and complaint for declaratory judgment. On October 28, 2002, the trial court issued an opinion and judgment entry. The size requirement of Ordinance No. 96-20 was found to be constitutional and the height requirement portion was found to be unconstitutional but severable. The ordinance was found to be content neutral, and the Afjehs were ordered to remove the sign from their garage door and to refrain from erecting any more signs violating the ordinance.
 {¶ 3} On November 8, 2002, the village filed a motion to show cause because the Afjehs had not removed the garage door sign and had instead erected a second sign in their front yard.[2] On November 25, 2002, at a hearing, the trial court found that although a portion of the garage door was painted, the sign could still be read through the paint. The October 26, 2002 judgment entry was modified to require the Afjehs to obliterate all remnants of the garage door sign by rendering the door a single color.[3]
 {¶ 4} Nasrin Afjeh filed a notice of appeal on November 27, 2002.[4]
On December 6, 2002, the village filed a second motion to show cause regarding the second sign in the Afjehs' yard. At the December 16, 2002 hearing, the trial court denied the motion. It then reviewed whether the Afjehs had complied with its previous order to remove the sign from their garage door. The trial court determined that the "shocking or electric pink" color did not comply with its oral statement at the earlier show cause hearing to paint the garage one dark color and ordered that the garage door be repainted "one dark color."
 {¶ 5} On August 10, 2004, eight days before oral arguments, the village filed a motion to dismiss the appeal. We denied Nasrin Afjeh's request to continue oral arguments, and as she did not attend court on August 18, 2004, the matter was submitted. Nasrin Afjeh filed her response to the motion to dismiss on September 22, 2004.
 {¶ 6} We will first address the village's motion to dismiss and then any portion of Nasrin Afjeh's appeal that survives.
Motion to Dismiss
 {¶ 7} In its motion to dismiss Nasrin Afjeh's appeal, the village argues that the appeal is moot because it enacted Ordinance 2002-18 which remedied the defect in the height provision of Ordinance 96-20 and added a severability clause. The village also contends that the appeal is moot because after filing the appeal, Nasrin Afjeh complied with the trial court's order to remove the sign, applied for and received a sign permit, and erected a new sign with the identical message.
 {¶ 8} The village's motion to dismiss is not well-taken. Amending the ordinance's height provision does not affect Nasrin Afjeh's challenge to the constitutionality of its size requirement, which was not altered by Ordinance 2002-18. The amendment also does not address her argument that the trial court exceeded its authority when it ordered her to paint her garage door one dark color.
 {¶ 9} We also note that Nasrin Afjeh filed a "motion for leave to amend appellant's memorandum in opposition to appellee's motion to dismiss appeal to correct an inadvertent error in caption and in text." This motion is moot upon our denial of the motion to dismiss.[5]
The Appellate Record
 {¶ 10} Initially, we note that we do not have a complete record in this case. The trial court held hearings on March 15, March 22, May 10, and June 26, 2002. A review of the docket shows that the transcript of the May hearing was never filed with the trial court. In a judgment entry filed May 13, 2002, the trial court indicates that testimony was adduced from two witnesses on May 10, 2002. Attached as an exhibit to the village's brief regarding the severability issue is an excerpt of the May hearing containing the testimony of Walter Edelen. We do not know, however, the identity of the other witness or the content of that testimony.
 {¶ 11} Upon appeal of an adverse judgment, it is incumbent upon the party appealing the judgment to ensure that the record or whatever portions of the record are necessary for determination of the appeal are filed with the court in which review is sought. Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 19; App.R. 9(B) and 10(A). The duty of submitting the record falls upon an appellant because it is the appellant who bears the burden of showing error by references to matters in the record. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. In the absence of a complete and adequate record, a reviewing court has nothing to pass upon and must presume the regularity of the proceedings and the presence of sufficient evidence to support the trial court's decision. Id.
 {¶ 12} During the pendency of this appeal, issues arose about the extent of the record on appeal. On March 14, 2003, this court issued a decision and judgment entry detailing the record before it. We noted that there were 247 documents filed between October 15, 2001 through November 26, 2002 and listed the transcripts of proceedings and depositions that were also part of the record. We also informed Nasrin Afjeh that if she wished to supplement the appellate record, she should file a motion with the trial court pursuant to App.R. 9(E). On April 3, 2003, she filed such a motion. The trial court held a hearing on the motion and ordered the appellate record supplemented with depositions filed December 5, 2002, and December 16, 2002. It also granted her leave to compile a list of documents she wanted included. On August 28, 2003, Nasrin Afjeh filed a copy of the docket with check marks next to the documents she wanted to have included in the appellate record. One of the check-marked documents was the May 13, 2002 order with the word "transcript" written at the right hand side. The entire May 10 hearing transcript, however, was never filed with the trial court. Therefore, it is not part of the record on appeal.
 {¶ 13} Consequently, we will address those assignments of error that we can. In the absence of a complete record, we will have to assume the regularity of the trial court's proceedings, as we must. Knapp,61 Ohio St.2d at 199.
Assignments of Error
 {¶ 14} "1. The court below erred in holding that the size requirement of Ordinance 96-20 was constitutional when the size requirement is unreasonable when applied to signs affixed to a building.
 {¶ 15} "2. The court below erred in holding that the size requirement of Ordinance 96-20 was constitutional when the size requirement favors commercial signs by allowing twice as much surface area for commercial speech as it allows private speech.
 {¶ 16} "3. The court below erred in holding that appellant had to paint her garage a dark color against her wishes as the right of a private owner is violated when she is deprived of her choice of color for the garage door of her private property and the scope of the remedy was unreasonable.
 {¶ 17} "4. The court below erred in holding that Ordinance 96-20 is severable when the ordinance did not have a severability clause and should be considered a single unit.
 {¶ 18} "5. The court below erred in holding that the Ordinance 96-20 is content neutral when village officials enforce said ordinance based on content."
Constitutionality of Size Requirement — First and Second Assignments of Error
 {¶ 19} In the first assignment of error, Nasrin Afjeh contends that Ordinance 96-20 is unconstitutional because the size requirement is unreasonable. In the second assignment of error, she alleges that the sign ordinance is unconstitutional because it is not content neutral since it favors commercial speech.
 {¶ 20} There is a strong presumption in favor of the validity of an ordinance. Huber Hts. v. Liakos (2001), 145 Ohio App.3d 35, 41 citingDowning v. Cook (1982), 69 Ohio St.2d 149, 151. A party challenging the validity of an ordinance bears the burden of demonstrating its unconstitutionality. Id. citing Mayfield-Dorsh, Inc. v. S. Euclid
(1981), 68 Ohio St.2d 156.
 {¶ 21} Signs are a form of speech that is protected by theFirst Amendment to the United States Constitution. Ladue v. Gilleo (1994),512 U.S. 43, 48, 114 S.Ct. 2038, 2041, 129 L.Ed.2d 36, 42-43. The United States Supreme Court, however, has noted that because there are certain problems associated with signs, such as causing obstructed views or distracting motorists, municipalities may exercise their police powers to regulate the physical characteristics of signs. Id. When an ordinance is challenged on a First Amendment basis, the first line of inquiry is whether the regulation is content-based or content-neutral. Davis v.Green (1995), 106 Ohio App.3d 223, 227. If a regulation is content-based then strict scrutiny is applied to determine the constitutionality of the ordinance. Painesville Bldg. Dept. v. Dworken Bernstein Co., L.P.A. (2000), 89 Ohio St.3d 564, 567. A content-neutral regulation, however, may impose reasonable restrictions on the time, place, or manner of speech as long as the restrictions are justified without reference to the content of the speech, are narrowly tailored to serve a significant governmental interest and leave open alternative channels for communication of the information. Ward v. RockAgainst Racism (1989) 491 U.S. 781, 791, 109 S.Ct. 2746, 2753,105 L.Ed.2d 661, 675.
 {¶ 22} Ordinance 96-20 provides in pertinent part:
 {¶ 23} "Section 1. The purpose of this ordinance is to permit signs that will not, by virtue of their size, location, construction, or manner of display, endanger the public safety of individuals, confuse, mislead, or obstruct the vision necessary for traffic safety or otherwise endanger public health safety and morals; and to permit and regulate signs in such a way as to support and compliment land use objectives set forth in the zoning code of the Village of Ottawa Hills and to control the appearance and protect the aesthetic quality of the community and property values within the Village of Ottawa Hills[.]
 {¶ 24} "* * *
 {¶ 25} "Section 5. Signs on commercial property
 {¶ 26} "A) Permanent signs existing on commercial property on the effective date of this ordinance shall be considered pre-existing non-conforming uses and are allowable under the provisions of this ordinance.
 {¶ 27} "B) The total sign area of a sign on commercial property in existence on the effective date of this ordinance shall be the maximum amount of total area allowable on that property and shall not increase through the erection of new signs.
 {¶ 28} "C) A sign which predates this ordinance on commercial property may be modified as allowed by this ordinance so long as the total sign area does not exceed that which existed on the effective date of this ordinance.
 {¶ 29} "D) No sign on commercial property may be:
 {¶ 30} "1) Located neared than 25 feet from the intersection of 2 streets.
 {¶ 31} "2) Have a maximum height in excess of 48" above grade.
 {¶ 32} "3) Constitute a visual obstruction which may be detrimental to the public peace, health, safety or welfare.
 {¶ 33} "4) Shall not exceed 20 square feet in sign area for all signs, except as provided in Section 5B.
 {¶ 34} "E) Only direct external lighting may be used to illuminate a sign in a commercial district. Such lighting shall not adversely impact on any neighboring property, nor shall such lighting diminish public safety in any manner.
 {¶ 35} "Section 6. Signs on residential property
 {¶ 36} "Signs erected after the effective date of this ordinance on residential property:
 {¶ 37} "1) Shall not exceed 48" in height.
 {¶ 38} "2) Shall not exceed 10 square feet in total square feet of all signs.
 {¶ 39} "3) Shall be located not nearer than 25 feet from the intersection of 2 streets.
 {¶ 40} "4) Shall not be located in the public right of way.
 {¶ 41} "5) Shall not be lighted in any manner. * * *"
 {¶ 42} Ordinance 96-20 does not limit in any way the message that may be displayed on signs in the village. Nevertheless, Nasrin Afjeh argues that the ordinance is content-based because it favors commercial speech since the ordinance allows commercial property owners to erect signs twice the size as residential property owners. A close reading of the ordinance, however, reveals that it is not the content of the sign that determines which size limitation applies but how the property is zoned. Signs which contain political speech may be 20 square feet if it is on property that is used for commercial purposes. We, therefore, conclude that Ordinance 96-20 is content-neutral, and the second assignment of error is not well-taken.
 {¶ 43} Having determined that Ordinance 96-20 is content-neutral, our next inquiry is whether it imposes reasonable restrictions on the time, place, or manner which are justified without reference to the content of the speech and are narrowly tailored to serve a significant governmental interest. A city may properly regulate the time, place, or manner of speech based on goals of traffic safety and promoting aesthetics. Davis,106 Ohio App.3d at 228 citing Metromedia, Inc. v. San Diego (1981),453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800, 815.
 {¶ 44} Nasrin Afjeh argues that ten square feet is an unreasonable size limitation, especially when the sign is affixed to the side of a building because it does not create any further visual obstacle. The determination of whether the size limitation is reasonable depends in part on the evidence that was before the trial court. We do not have a complete transcript of all the hearings the trial court conducted on the validity of the sign ordinance; therefore, we must presume the regularity of the proceedings. The evidence that we do have indicated that the village conducted research before determining the size requirement and consulted real estate agents and contractors about the limits. Although a sign affixed to the side of a building may not constitute any further visual obstacle for drivers, it may be a visual distraction that could impact traffic safety and public safety. In addition, such signs could also negatively impact the aesthetics and property values of the neighborhood. We, therefore conclude that the ten square feet size requirement is a reasonable restriction that serves a significant government interest. The first assignment of error is not well-taken.
Garage Door Color — Third Assignment of Error
 {¶ 45} In the third assignment of error, Nasrin Afjeh argues that the trial court exceeded its authority when it ordered her to repaint her garage door one dark color. We are unable to address this assignment of error. The judgment entry finding the size requirement of Ordinance 96-20 constitutional and ordering the removal of the garage sign was entered on October 28, 2002. Nasrin Afjeh filed her notice of appeal on November 27, 2002, "from the order entered in the action Case No. CI-2001-4739 on the 28th day of October, 2002, by the Court of Common Pleas of Lucas County, Ohio." The trial court held a hearing on December 16, 2002 on the show cause motion of the village and ordered the garage painted one dark color. It is clear, therefore, that the trial court's order concerning the color of the garage door is not within the scope of this appeal. Nasrin Afjeh has never sought to amend her notice of appeal to include the trial court's order concerning the color of her garage door. The third assignment of error is not welltaken.
Severability of Ordinance 96-20 — Fourth Assignment of Error
 {¶ 46} Nasrin Afjeh contends that the trial court erred when it found that Ordinance 96-20 was severable. The trial court found that height requirement in section 6 of Ordinance 96-20 was vague and therefore was unconstitutional. It went on to hold that the height requirement was severable from the remaining portions of the sign ordinance. Nasrin Afjeh argues that because a severability clause was not included in the sign ordinance as with other ordinances, the village had intended Ordinance 96-20 to be treated as a single, non-severable unit. She further contends that since the sign ordinance was not severable, the whole ordinance should have been found to be unconstitutional and unenforceable against her garage sign.
 {¶ 47} As far back as 1880, the Supreme Court of Ohio has found that city ordinances may be severable. In Piqua v. Zimmerlin (1880),35 Ohio St. 507, 511-12, it stated "The same rule applies to a by-law, or ordinance, that applies to a statute; and that is, that where the statute consists of severable and independent parts, having no general influence over one another, and a part is valid and a part is void, the part which is valid is operative, and will be carried into effect." A court must find that, standing alone, legal effect can be given to the parts which are constitutional and that the legislature intended the statute to be severable. Middletown v. Ferguson (Apr. 29, 1985), 12th Dist. No. CA84-04-049. In determining the legislative intent of a law or statute, courts look to the language employed and the purpose to be accomplished by the legislation. Id.
 {¶ 48} Obviously, if a severability clause is included in a piece of legislation, the legislative body intended for it to be severable. The absence of a severability clause, however, does not necessarily mean that the statute or ordinance was not intended to be severable. "Unless it is evident the legislative body would not have enacted those provisions which it is empowered to do, independent of those provisions which is has no power to enact, the invalid part may be severed and dropped if what remains is fully operative as a law." Id. citing I.N.S. v. Chadha
(1983), 462 U.S. 919, 934, 103 S.Ct. 2764, 2775, 77 L.Ed.2d 317, 334.
 {¶ 49} The purpose of Ordinance 96-20 was to protect public safety, traffic safety, property values, and the aesthetic quality of the village. The language of Ordinance 96-20, however, does not suggest that the village would not have enacted the sign ordinance 96-20 in the absence of the height requirement. We, therefore, conclude that the village intended for it to be severable.
 {¶ 50} In Geiger v. Geiger (1927), 117 Ohio St. 451, 466, the Ohio Supreme Court set forth the test for determining whether an unconstitutional provision may be severed from a statute or ordinance:
 {¶ 51} "(1) Are the constitutional and unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause of part is stricken out? (3) Is the insertion of word or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?"
 {¶ 52} Section 6 of Ordinance 96-20 places five requirements on signs erected on residential property. Each provision is separately numbered and is capable of standing by itself. None of the requirements refer to any other provision; therefore, the elimination of the height requirement does not disrupt the regulation or enforcement of any of the other requirements. Finally, it is not necessary to insert words or terms to give effect to the rest of the ordinance. We, therefore, conclude that the height provision is severable. The fourth assignment of error is not well-taken.
Enforcement of Ordinance 96-20 — Fifth Assignment of Error
 {¶ 53} The fifth assignment of error concerns how the village enforces Ordinance 96-20. Nasrin Afjeh argues that the village enforces the ordinance based on the content of the sign. She contends that when the message is favorable to the village, it does not enforce the ordinance on signs that do not conform.
 {¶ 54} Where an act is challenged on the ground that it is unconstitutional as applied, the burden rests upon the party making the attack to present clear and convincing evidence of actions that make the ordinance void as applied. State v. Boggs (June 25, 1999), 1st App. Dist. No. C-980640 citing Belden v. The Union Central Life Ins. Co.
(1944), 143 Ohio St. 329, paragraph six of syllabus. Once again, our ability to fully review this assignment of error is hampered by the lack of a complete transcript. The evidence that is available to us indicates that the village did not apply the ordinance simply based on the content of the signs. There was testimony that signs placed in the right of way were consistently removed. In addition when the nonconformance of the school banner and the A-frame signs at Gresey field were brought to the attention of the village, the village required the school to remove the banner and to obtain a variance for the A-frames.[6] Furthermore, several witnesses testified that they told Nasrin Afjeh that she could display the same message on a sign that conformed to the physical requirements of the ordinance.
 {¶ 55} We, therefore, conclude that the village did not enforce the sign ordinance based on content. The fifth assignment of error is not well-taken.
Conclusion
 {¶ 56} All five of Nasrin Afjeh's assignments of error are not well-taken and are overruled. The judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, court costs of this appeal are assessed against appellant, Nasrin Afjeh.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., and Lanzinger, J., Concur.
[1] The issues in the appeal concern the constitutionality of Ordinance No. 96-20. The Afjehs counterclaim was voluntarily dismissed in December 2002, and therefore is not before this court.
[2] Nasrin Afjeh contended that the sign had been removed since she first covered it with paper and then painted the portion of her garage door with the message on it.
[3] The trial court declined to rule on validity of the second sign and granted the village time to file an amended complaint.
[4] Her husband did not appeal the trial court's decision.
[5] It should be noted, however, that the amended motion still had the wrong caption. The amended motion incorrectly identified Nasrin Afjeh as plaintiff-appellant and the village as defendant-appellee.
[6] The school requested a variance to put up five A-frame signs. The village allowed a variance for three signs.